May it please the Court, Ethan Jacobs on behalf of the appellant, Keith Griego. Can you pull the microphone a little closer to you? Is this the live one? They're both live, but just... Thank you, Your Honor. Okay. I'd like to reserve two minutes for rebuttal. This case presents a straightforward question. When an artist pleads in his complaint that he creates an album cover for a specific album and delivers it for that purpose, is the copyright license implied from that conduct limited to that purpose as a matter of law, or is it instead by default unlimited in scope? The district court here held that it was unlimited, and that was error. Mr. Griego created an album cover for Mr. Jackson's album, Microphone Mathematics. That's what the complaint alleged, that he created it for that album. And the complaint alleges that the defendants then later used a cartoon character shown on that album cover for unrelated purposes, such as music videos, other album covers, merchandise, figurines, and did so without permission. So your contention is, is that when he created this art, that it was limited to the album cover. Could somebody have created... Could they have created a poster based on the album cover? I think that if the poster was to advertise that album, that the copyright law requires that he be allowed to, because it's specifically there... But it would have had to have reproduced the album cover precisely? I'm not... You know what? I think that's a little... If you're the photographer taking a picture of the Beatles on Abbey Road, can you reproduce the photo on a poster if it doesn't also have whatever was originally on the album cover that identified it as Abbey Road? I think that the use of it as a poster would have to be limited to the purpose for which the implied license was granted. The implied license was there to be used as an album cover. And I think it's 113C, although it requires that it be allowed to advertise that same product. I mean, this really comes down to an issue of really who has the burden on this. And the Second Circuit in the Byrne case is very clearly held. We conclude that in cases where only the scope of the license is at issue, the copyright owner bears the burden of proving that the defendant's copying was unauthorized. So that would put on you an affirmative burden, which you'd have to carry under Iqbal to plead facts establishing the limitations on the license. We would have followed the Second Circuit's rule. Did you carry that burden? Your Honor, I believe what you just mentioned was a proof burden and not a pleading burden. No. Pleading burdens under Iqbal follow the burden of proof. So there's no drawing a distinction. What I believe, Your Honor, is that the pleading burden for an implied license is to state the conduct that gives rise to the license and that the burden when you are pleading here, it just has to do with conduct. What was the conduct that was done? What was the purpose? And that the resulting scope of the license has to follow the purpose for which the plaintiff pleaded he created and produced this work. But what facts did you plead that established the limitations on the license and what were those limitations? Yes. So, Your Honor, it isn't, in the cases of implied license, these are implied from conduct. Often mute conduct with no words. Is there essentially an escape valve for the situation where somebody gives someone a work for a particular purpose and can't then come back and say, I'm suing you for using it for that purpose. But it doesn't mean that when they give it to them, they have to then otherwise, when it would otherwise be mute, say, well, you know what, I'm actually going to tell you here are the reasons I'm giving it to you, here are the limitations on it. Instead it's the scope of that implied license follows from the purpose that they are mutely giving it to them for. That is what all the cases cited in the paper show. Somebody gives someone a screenplay in Fontana, they can use it as a screenplay, they can't make a sequel, a novelization, something like that. It isn't the job of the person who is the freelancer with no written contract and is handing something over for a purpose to prove or plead all of these additional limitations. Given that the complaint didn't state any further facts which demonstrated some limitation, the lower court ended up giving great weight to the fact that your client waited 23, 24 years before acting upon this asserted copyright. Do you think it was appropriate for the district court to do that? I do not for several reasons. Number one, the Supreme Court has found in Petrella there is not a lachey's defense in copyright. If you bring your claim, no matter how long, if it's within the life of copyright, and you can look back three years for infringement, there is not a lachey's defense. And saying you didn't say anything, and that's the basis for finding you've waived or acquiesced to... So you don't think that it's even a relevant consideration? Not saying I don't think it's relevant, but also, number one, the complaint does not allege that he was aware of all of the infringements at the time, and so there's no basis for the court to have concluded that he knew about them all throughout the period. And also, in the case of say that silence alone is not sufficient to find it relevant to find that somebody should be... But the cases have taken into account the failure to raise a copyright issue for eight years, for 10 years, as being salient in determining whether or not there was a limited or unlimited license, correct? Not alone, as far as I'm aware. Not alone where the parties have no ongoing relationship, where no one is receiving royalties, where the parties have no reason to have an ongoing communication. In for instance, asset marketing, they had the opposite. Someone was being paid hundreds of thousands of dollars, they were negotiating contracts throughout the period, and what happened is at the end of it, the copyright owner said, well, it turns out we have a limitation on the scope, you have to keep paying me, and as long as I'm hired and employed by you, that counts. And so silence in that context is relevant, but silence all on its own, no, I don't believe it is. If you were given leave to amend, to try and satisfy the burden that I read from the Second What would you be able to do that, and what would you say? So Your Honor, in the case where a freelance artist is creating something under circumstances like this, all he should need to allege, and what I would expand to allege, is that he was asked by a particular person to create an album cover for a specific album, was paid, did that, and handed it over. That is enough to establish the limitation. So you wouldn't be able to plead any facts that he said, no other uses, or put any kind of affirmative limitations, it would all just be, I've done this, and silence on everything else? I believe that that is all that's required, because But you wouldn't be able to plead anything beyond that, I'm just, I want to understand the scope of I have no basis to argue that, to plead that he contemporaneously communicated additional limitations. Okay. All right. I'm sorry. You did assert that the lower court abused its discretion in failing to allow your client to amend, correct? Correct. So then, as far as what Judge Collins was referring to, what facts he would have alleged in an amended complaint, all I saw was a reference to how Grego created the work for Stones Throw Records to use as an album cover, and therefore Jackson's rights to use it were very narrow. And so, were those the totality of the facts that you had to offer to the lower court? That he was asked to create an album cover for a particular album, was paid, I think, $300 for it, and delivered it for that purpose. I believe that's all that's required to show that the implied license is limited to the purpose for which he provided it, and that he wasn't giving boundless rights. All right. We took you over your time, so I'll give you your two minutes for rebuttal. Appreciate it, Your Honor. All right. So, we will hear next from Mr. Given. Thank you, Judge Collins, and may it please the Court. The guiding principle in this case is that an implied copyright license will be sustained as a matter of law, where the facts are that the passage of time, without objection, to known uses of a commissioned work, handed over with no explicit limitations whatsoever. Are you aware of a Ninth Circuit case that adopts the principle that I recited from the Bourne case in the Second Circuit? The closest that I came to citing a case parallel to that one, Your Honor, was the MAI case. That's the 1993 case by this court. In that case, it adopted the same general structure for assessing copyright license agreements. That is, the existence and then the scope. Does it clearly, like the Second Circuit case, put the burden on the copyright holder to establish the limitations when the sole issue is scope? 100 percent.  Counsel, you referred to the passage of time. What cases do you have that will support that the passage of time is relevant here? I guess I'd look to the Corman case from the Eleventh Circuit, the Signorelli case, which was Judge de Villa's decision in the District Court. And how is it relevant? Counsel says laches is not the appropriate doctrine here. So what's the principle? Well, the fundamental principle, Judge Biles... to a known use. And I believe that the issue of knowledge is conceded in the complaint. And that's in paragraph 19, ER 77, paragraph 19 of the complaint. And I want to be faithful to the complaint and just read it verbatim. This, by the way, paragraph 19 follows the iteration of all the uses that were made of Mr. Griego's work. Paragraph 18 iterates them in some detail. Paragraph 19 follows by saying, and I quote, Mr. Griego was gratified to see that Madlib appreciated his Lord Quah's character so much. But that's vaguest to time. I mean, that could refer to the uses that are described in the preceding paragraphs in 2023. All right. Well, there was in paragraph 24 some date checking where the complaint acknowledges uses in 2013, 2014, 2015. And the attachment to the complaint, of course, are trademark registration. Well, the uses that are described in 2013, 14, or 15 are on other recordings. Right. And then there are facts about how in 22 and 23 and 21, it changes into a lot of all these different forms of merchandise. I mean, maybe there's more facts out there beyond what's in the complaint. But the complaint seems to suggest it was used for the one album cover, is then used for some other recordings in another period. And then there's this merchandise in this later period. Now, maybe there was merchandise all along. But again, you're here on a pleadings motion. So we only have the facts that are put on the table by the complaint. I follow. So how is the general statement at the end of all that, that he appreciates the fact that he likes the character, how is that a concession that he knew of the knowledge all those years? That's how I read it. I have to say that- Don't we have to construe complaints in the light most favorable to the plaintiff? That's true. Again, I don't think there's any mistaking the fact that when you read Paragraph 19 in conjunction with Paragraph 18, he's acknowledging that he knew all along that these uses were happening. No, he's not acknowledging that he knew all along. At some point, he knew, but not all along. But more to the point, all of the uses in question, Your Honor, were in plain view. I mean, they were known to the world. This is not an instance like asset marketing, where somebody is sitting behind a computer terminal, you know, working on code and making changes to code. This is something that's open, notorious. I'm still trying to figure out what the nature of your point is. I mean, I understand that, and the time does look, you know, it does look really strange. But it feels like your argument really does sound in latches. That is, he sat on his rights, and thus he's forfeited it. As opposed to, I think the argument that you might be trying to make is there ought to be an inference in his longtime acquiescence that he understood that this was an unlimited license. That's true. I mean, it goes back to that old Latin saying, which I can't pronounce exactly. But the old, you know, the old Latin saying that silence is consent. I don't think it's a latches argument, Your Honor. I think it's more akin to an estoppel argument. And the implied license doctrine is, in effect, the legal embodiment of that equitable defense. It's an estoppel argument. You can't come back, and that was the thing that shocked me, frankly, and caused me to pause when I first read the complaint. We're talking about 25 years ago that this work was delivered. And it's been used continuously since then in various ways, as Judge Collins rightly points out, at various times. Over the next at least 15 years, if not 20 years, depending on how you read the complaint, I don't think there's any doubt that, you know, if you look at paragraph 24, he's acknowledging it starts at least as early as 2013 in these other videos and other recordings and so forth. But it's unlike any case that I've seen. And it lines up very similarly to Judge De Villa's decision in Signorelli, where there was a 10-year period that elapsed. And Judge De Villa said, listen, if you have no affirmative pleading of a limitation on this license, and the course of conduct is that the work has continued to be used for over a decade, you can't come to court and say that there was a limitation. And that's an adoption of the three-part test that this court announced in Asset Marketing. And if you track that... If you had an express agreement, an express written agreement, to limit it to the album use, and the defendant had conducted himself as the way he did here over the course of 25 years, now what? Well, that's a different case because... Well, that's right. That's why I asked the question. That's a good answer. Very, very well. So Judge Wright had that exact set of facts in... And I can't remember the name of the case, but I cited it in the brief in pages, I think, 22 to 23. I assembled all the district court decisions that have considered this issue at the Rule 12 stage. And some of them have gone one way, and some of them have gone the other way. And I've tried to... I tried to draw a rule from those cases. The answer is that if there is a written agreement, that's going to trump any... And you can enforce that even when there's been a failure to object to a known use. That was your phrase. Well, that's an interesting question. I don't know where that comes out, to be honest, Your Honour. I think that... I think course of conduct... Look, when you're looking at orders of proof on a breach of contract... And this, notionally speaking, we're talking about a contract claim, ultimately, in this. I like to say to my associates that these kind of cases are contract claims masquerading as copyright claims. But when you look at orders of proof, how do you prove the intent of the parties? You look at any written agreements. You look at any oral statements. Don't have that here. The next order of proof is course of conduct. And the course of conduct is overwhelming in this. So, if there's a deficiency here, why shouldn't he have been granted leave to amend? Because the one fact that he proffered by way of leave to amend was directly contradictory to... That kind of puzzled me because the district court didn't cite any authority that said that you can't contradict a prior pleading. And I'm aware of authority from this court that says the opposite. We have the PAE government services case says the short of it is that there is nothing in the federal rules of civil procedure to prevent a party from filing successive pleadings that make inconsistent or even contradictory allegations. Because as the facts develop, you realize, oh, there's a nuance. So he's like, well, actually, I gave the license to the record company and not to him. And so, you know, that didn't seem like a valid rationale. Why shouldn't they be granted leave to amend then? I appreciate your comments, Judge Collins. I guess what I would say there is this wasn't a nuance. This was a fundamental allegation contained in the complaint regarding who the license flowed to. And it's unambiguous. The license flowed from Mr. Griego to Mr. Jackson as alleged. And that means that all the predicate facts that give rise to an implied license are embedded in that allegation. The notion that it was Mr. Jackson that requested the work, that the work was delivered to Mr. Jackson with intent to use. And I take it that all the subsequent uses that are alleged in the complaint are not Stone's Throw or whatever, the recording company. I'm not sure, to be honest. Yeah, I'm not sure. Let me ask one final question. Regarding course of conduct, you made reference to inference from long-time acquiescence and that silence is consent. Both of those notions require the plaintiff to have known in real time what was going on. His assertion is that he didn't know. And at this point, we've kind of taken you to task whether or not the complaint does clearly show that he knew or not. To the extent that he didn't know, does that affect your argument as it relates to consent and acquiescence? Well, I guess I'd put it this way. First of all, I've never heard my friend on the other side say that his client didn't know. Second, you've got the paragraph 19 in the complaint. Third, you have open, public, notorious use of the work, known to the world. And so, my view of that is, Your Honor, that if you're going to say that everything that was otherwise open and notorious and known to the world was not known to me, and I know there's a bias against grandularity in complaints, I get that, but you've got an affirmative obligation to come forward and say why it is you don't know. Either you were indisposed, you were out of the country, as in Neely, the plaintiff was in jail, something. But there was nothing. So, and I guess to answer the question specifically that you asked, Your Honor, I guess what I would say is I don't think it changes the analysis enough to get over the pleading hurdle. All right. Thank you, Counselor. We're taking over time, but we'll still give the two minutes to Mr. Freundlinger. Thank you, Judge Collins. And may it please the Court, I just want to briefly address this appeal as it relates to Rapcats.  the allegations of the complaint are pretty clear. It admits that Mr. Jackson is a member of Rapcats. So, in essence, Jackson is Rapcats. Rapcats sells to two other people in Rapcats. So it's a little different. And that's why you're separately represented. Well, there are three members, but Mr. Jackson was one of them. And Rapcats sells the Kwame Mosel merchandise that's also been pled. And it's also been pled that Jackson had permission to use the character and that he had 25 years of unopposed use. And if the license was unlimited, then that unlimited license would include an ability to sub-license in the way that was done to Rapcats. I'm here in this brief moment just to suggest that, yes, Rapcats' rights flow from Jackson, but if, as Mr. Given urged and as we agree and concur, the implied license was unlimited. Do you agree that your appeal or your position in this appeal basically stands or falls with your colleague in that if the license wasn't unlimited and had limitations, then the sub-license would also fall? That's correct. But if the license was unlimited, then the sub-license is clearly within the scope of it and therefore you would also succeed. So you're going to stand or fall together. It's never going to really split where he would win and you would lose or vice versa. That's correct. That's exactly right. And I think there was a hint of that in the briefing, so I just wanted to take this brief moment just to remind the Court that Rapcats is also sitting out there and if indeed you go along with Mr. Given's client's argument, as I also believe you should, Rapcats should also have the permission. All right. Thank you, counsel. All right. We'll hear rebuttal now. Thank you, Your Honor. I'm not going to tell you that Mr. Griego didn't know about any of the various different infringements at any time. He knew about some of them at different times and he's suing for the more recent ones. Nothing in paragraph 19 suggests he was aware of every single one at all time and the second sentence of that paragraph says he didn't like it. Now, did he say something about it? All the comments I heard from Mr. Jackson's counsel were Lachey's arguments, honestly, that there is some affirmative duty to explain why you didn't speak earlier, references to longtime acquiescence, course of conduct. These all suggest parties who had something to do with each other during this period, which there's no allegation that Mr. Griego and Mr. Jackson did. He's a freelance artist who handed something over and that was the end of the relationship. To import into this an obligation to object or to sue is simply a backdoor to reimposing Lachey's where the Supreme Court has said it doesn't exist. All the cases that the Ultimately, if the court were to follow Born and concluded that where a license is established then the copyright owner bears the burden of proving that it is limited, then what would you be able to show that it was limited just beyond the fact that there was this license and it provided for a particular use? Implied licenses are implied from conduct and for that reason must be limited. Otherwise we are turning everything else So by conduct, so to the extent that that conduct includes acquiescing and allowing a party the Mr. Jackson to utilize this work in different ways over the course of years, that sounds to me that that kind of that is a form of conduct that can be considered by the trial court. I believe it's a form of conduct along with other conduct but it is not alone sufficient to dismiss a claim that he doesn't switch the burden to him having to allege that he somehow communicated or sued. But if we find that where a client or where a plaintiff acknowledges a license existed and then therefore find that the owner bears the burden of proving that the license is limited, then you agree that at this point your complaint would fall short? I don't believe that my, I believe that my client has pleaded a complaint that is limited to a particular purpose and that it is not his burden to rebut affirmative defenses in his pleading by pleading beyond that why it should be limited. Alright, thank you counsel. Thank you your honor. Thank you counsel for all parties for their helpful arguments in this case and the case just argued will be submitted.
judges: BYBEE, COLLINS, Curiel